EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Bird Construction Corp.<br>        Recurrida<br><br>        v.<br><br>Autoridad de Energía Eléctrica<br>        Peticionaria | Certiorari<br><br>2000 TSPR 189 |

Número del Caso: CC-2000-504

Fecha: 20/diciembre/2000

Tribunal de Circuito de Apelaciones:

                            Circuito Regional I

Juez Ponente:

                            Hon. Guillermo Arbona Lago

Abogado de la Parte Peticionaria:

                            Lcdo. Juan A. Arsuaga Alvarez

Abogados de la Parte Recurrida:

                            Lcdo. Fernando Barnés Vélez
                            Lcda. Rebeca Barnés Rosich

Materia: Revisión Administrativa

        Este documento constituye un documento oficial del Tribunal Supremo que está
    sujeto a los cambios y correcciones del proceso de compilación y publicación
    oficial de las decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

**Bird Construction Corp.**

    **Recurrida**

       **vs.**                **CC-2000-504**        **CERTIORARI**

**Autoridad de Energía Eléctrica**

    **Peticionaria**

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 20 de diciembre de 2000

**El 1[ro.] de agosto de 1996 la Autoridad de Energía Eléctrica --en adelante, A.E.E.-- y Bird Construction Company --en adelante, Bird-- otorgaron un contrato de ejecución de obra mediante el cual esta última se obligaba a construir un edificio de oficinas en Santurce para la A.E.E. En la cláusula 4.5 del documento que evidencia dicho contrato consta el acuerdo de las partes de someter a arbitraje cualquier disputa que surgiera con relación a la ejecución del mismo. Textualmente, en dicha cláusula se dispuso que:**

> **"Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association,**

and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

[. . .]

4.5.6 Claims and Timely Assertion of Claims. A party who files a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded. When a party fails to include a Claim through oversight, inadvertence or excusable neglect, or when a Claim has matured or been acquired subsequently, the arbitrator or arbitrators may permit amendment.

4.5.7 Judgment on Final Award. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

Al amparo de dicha cláusula, y debido a ciertas controversias surgidas entre las partes durante la construcción de la obra, el 25 de febrero de 1999, Bird instó una reclamación ante la Asociación Americana de Arbitraje. La naturaleza de la disputa fue descrita en el documento titulado "Fifth Ammended Demand for Arbitration"  en los siguientes términos:

"The construction of the project has been affected by numerous changes in the work which have represented additional costs, additional time required, and delay damages to Bird and its subcontractors. Although, Bird has proceeded to perform the work required in said changes, Bird and PREPA have not been able to reach an agreement on the time and money that should be apportioned to each of the proposed change orders (P.C.O.) in controversy. All the P.C.O.'s submitted by Bird to PREPA, included in this demand for arbitration, have been rejected by PREPA as submitted, under the argument, either that the work referred to was part of the original contract, or that its reasonable value is only a fraction of the amount claimed by Bird. There are some controversies which are mature, as of today, and others which will probably mature in the near future, and which will be added to the present arbitration procedure.[...]"

Entre los remedios solicitados por Bird a la autoridad arbitral, constaba su petición de que se declarara que no había incurrido en incumplimiento, que la notificación de incumplimiento que le había hecho la A.E.E. estaba errada y que tenía derecho a indemnización por daños.

En cambio, por medio de una reconvención, y enmienda a la misma, del 19 de marzo de 1999, la A.E.E. reclamó contra Bird:

-la reducción de su obligación de pagar por concepto de modificaciones en labor y tiempo;

-la indemnización por daños causados al edificio anexo, cuantificada en setecientos mil dólares ($700,000.00) como consecuencia, alegadamente, de la negligencia de Bird en su obligación de proteger la estructura contra daños y vandalismo;

-la indemnización por daños debido a la mora en la entrega del proyecto;

-la indemnización por gastos en que tendría que incurrir para corregir defectos en la obra atribuibles, alegadamente, a Bird.

Estando pendiente dicha controversia ante la Asociación Americana de Arbitraje, el 24 de agosto de 1999, el Jefe de la División de Suministros de la A.E.E., Cesar I. Aldarondo Vélez, le notificó a Bird, mediante carta, que había eliminado su nombre del Registro de Proveedores de la A.E.E.. Justificó dicha actuación en los siguientes términos:

"El Capítulo III, sección 3, artículo B, inciso 1a y 1b, del Reglamento de Subastas de la Autoridad de Energía Eléctrica (A.E.E.), establece lo siguiente:

1.  "Un proveedor que haya ingresado previamente al Registro de Proveedores de la A.E.E., puede ser eliminado del mismo por varias razones, entre las cuales se encuentran las siguientes:

    a.  "su patrón de conducta afecta los mejores intereses de la A.E.E."

    b.  "incumplimiento contractual"

La experiencia con su compañía durante la construcción del Nuevo Edificio de Oficinas en Santurce, no está a tono con lo esperado en nuestro Reglamento. Las siguientes acciones han afectado la realización del proyecto:

1.  Atraso del proyecto de aproximadamente siete (7) meses provocado por el Contratista, lo que constituye un incumplimiento contractual.

2.  Negativa a reconocer créditos a la A.E.E.

3.  Reclamos irreales del Contratista en "extended overhead", acción reñida con la práctica en la industria.

4.  Retos continuos a la inspección de la A.E.E.

5.  Daños provocados por inundaciones al Edificio Anexo ascendentes a unos $700,000 por no cumplir con lo establecido en el contrato."

En dicha carta, el Jefe de la División de Suministros le señaló a Bird que tendría un "término de 30 días para apelar ante el Jefe de la División de Suministros". Es decir, <u>ante él mismo</u>. El 22 de septiembre de 1999 Bird "apeló" dicha determinación tal como le habían indicado. El 6 de octubre fue denegada su petición y se le "instruyó" en relación al proceso que alegadamente debía seguir en revisión de la determinación del Jefe de la División de Suministros. Con ese objetivo, en la carta denegando la petición de Bird, se le informó que:

> "Tiene un término de 20 días para presentar una Moción de Reconsideración. La A.E.E. se entenderá notificada de la Solicitud de Revisión, únicamente por radicación del mismo ante la Secretaría de Procedimientos Adjudicativos, Oficina 419, Edificio Luchetti, Ave. Ponce de León 1110, Parada 17, Santurce, P.R. o mediante correo de los E.U.A. dirigido únicamente al apartado 363928, San Juan, P.R. 00936-3928. Las radicaciones efectuadas fuera de lugar o apartado mencionado se tendrán por no sometidas."

De esa determinación de la agencia, el 27 de octubre de 1999, Bird recurrió mediante recurso de revisión al Tribunal de Circuito de Apelaciones imputándole a la A.E.E. la comisión de cuatro errores.[1]

El 24 de noviembre de 1999, la A.E.E. solicitó la desestimación del recurso de revisión alegando falta de jurisdicción por la supuesta violación a la doctrina de agotamiento de los recursos administrativos. Alegó, además, que la determinación que se pretendía revisar era de carácter inicial y no

---

[1] Alegó que erró la A.E.E. al suspender a Bird Construction Corp. del Registro de Proveedores por cuanto:

-"[...] ello constituye una suspensión y/o exclusión de licitar no autorizada por su Ley Habilitadora, por lo cual la agencia carece del poder delegado para ejercitar dicha acción."

-"[...] no existe base racional para dicha determinación resultando la misma en una actuación arbitraria, caprichosa e irrazonable."

-"[...] dicha decisión se tomó sin garantizar a la peticionaria un debido proceso de ley."
-"[...] el Reglamento bajo el cual se tomó la decisión adolece de vaguedad de tal forma que, tanto de su faz, como en su aplicación en el presente caso, resulta arbitrario y caprichoso."

una final, con lo cual el Tribunal de Circuito de Apelaciones carecía de jurisdicción para expedir el recurso.

El 31 de marzo de 2000 el Tribunal de Circuito de Apelaciones dictó sentencia expidiendo el recurso de revisión y revocando la decisión administrativa que excluía a Bird del Registro de Proveedores de la A.E.E.

Inconforme con dicha sentencia recurrió ante este Tribunal la A.E.E., alegando que erró el Tribunal de Circuito de Apelaciones al:

>-[...] asumir jurisdicción en el caso a pesar de que no se habían agotado los remedios administrativos;
>-[...] determinar que se había violado el debido proceso de ley al no darse una notificación diáfana para el entendimiento del lego;
>-[...] determinar que la Autoridad había anticipado el resultado del proceso de arbitraje en forma "ex parte" para utilizarlo como punta de lanza y a destiempo en la eliminación de Bird del Registro de Proveedores.

Examinada la solicitud de certiorari, y sus anejos, radicada por la A.E.E. concedimos a Bird Construction Corp. el término de veinte (20) días para mostrar causa por la cual no debíamos expedir el auto solicitado y dictar sentencia revocatoria de la emitida en este caso por el Tribunal de Circuito de Apelaciones.

Contando con la comparecencia de ambas partes resolvemos según lo intimado.

I

Dentro del campo administrativo priva la norma de que los tribunales han de mantener una actitud de deferencia al cauce que provea la agencia para la solución de las controversias que se le presenten. Ante la ausencia de una clara demostración de daño irreparable y la ausencia de remedio adecuado, debe prevalecer la doctrina de agotamiento de recursos administrativos. García Cabán v. U.P.R., 120 D.P.R. 167 (1987); Otero Martínez v. Gobernador, 106 D.P.R. 552 (1977); Mari v. Vicéns, 67 D.P.R. 473 (1947). Universidad del Turabo v. L.A.I., 126 DPR 497 (1990).

Recordemos que dicha doctrina, incorporada a nivel estatutario a través de la Sección 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. Sec. 2173, atañe a la etapa dentro del procedimiento administrativo en la cual los tribunales deben intervenir y ejercer su

función revisora. <u>Colón Ventura</u> v. <u>Méndez</u>, 130 D.P.R. 433 (1992). <u>Aguilú Delgado</u> v. <u>P.R. Parking System</u>, 122 D.P.R. 261, 266 (1988). "El agotamiento contempla una situación en que alguna acción administrativa ha comenzado, pero aún no ha finalizado[.]". Bernard Schwartz, <u>Administrative Law</u> Sec. 8.26, a la pág. 525 (3rd ed. 1991). <u>Rivera Ortiz</u> v. <u>Municipio de Guaynabo</u>, res. el 28 de junio de 1996, 141 D.P.R.__ (1996).

No se trata de que el Tribunal carezca de jurisdicción, sino de que en deferencia al trámite administrativo, debe <u>abstenerse</u> de ejercerla hasta tanto el mismo finalice.

Por otro lado, la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A Sec. 2172, dispone que:

> "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de 30 días contados a partir de la fecha del archivo en autos de la copia de la notificación <u>de la orden o resolución final</u> de la agencia [...]". (Enfasis suplido.)

Esta Ley claramente requiere, <u>de forma jurisdiccional</u>, que la orden o resolución sobre la cual se solicita revisión, sea final. Obviamente, una orden o resolución final es aquélla emitida por la última autoridad decisoria o adjudicativa de la agencia administrativa. <u>En los casos de la A.E.E., la autoridad adjudicativa final no es su División de Suministros, sino la Secretaría de Procedimientos Adjudicativos</u>, conforme al Reglamento para la Adjudicación de Querellas, aprobado por dicha agencia. Título 22 de Reglamentos de Puerto Rico, Secs. 630.1, *et seq.* Dicho reglamento provee para la adjudicación de querellas administrativas mediante la concesión de un procedimiento adjudicativo formal conforme a las exigencias del debido proceso de ley. Las decisiones finales de la Secretaría de Procedimientos Adjudicativos, luego, pueden estar sujetas a un proceso de reconsideración --cuya solicitud es de carácter jurisdiccional según los términos de su reglamento-- y, posteriormente, están sujetas al proceso de revisión judicial.

II

En el caso de autos, Bird no recurrió al proceso formal de adjudicación de la Secretaría de Procedimientos Adjudicativos de la A.E.E.. Decidió recurrir al Tribunal de Circuito de Apelaciones en revisión de una determinación que, a todas luces, no es final dentro de la A.E.E.. La decisión del Director del Departamento de Suministros estaba sujeta a apelación, mediante querella, ante dicha Secretaría de Procedimientos Adjudicativos. En vista de que Bird no recurrió al tribunal apelativo intermedio en revisión de una resolución final de la agencia administrativa, forzoso resulta concluir que dicho tribunal carecía de jurisdicción para resolver la controversia pues según los términos de la Ley de Procedimiento Administrativo Uniforme, sólo puede recurrirse en revisión ante el Tribunal de Circuito de Apelaciones con motivo de una orden o resolución final administrativa.

En fin, el tribunal apelativo debió denegar el recurso de revisión instado por Bird, pues la jerarquía adjudicativa de la A.E.E. dispone para que las determinaciones adjudicativas finales del Jefe de la División de Suministros sean apelables ante la Secretaría de Procedimientos Adjudicativos de la A.E.E. En el caso de autos Bird estaba obligado a agotar dicho remedio administrativo, lo cual no hizo. Sin embargo, otra razón abona a la conclusión de que la controversia no debió adjudicarse en el tribunal apelativo: la vigencia del proceso arbitral.[2]

III

Nuestro ordenamiento legal dispone que "[d]os o más partes podrán convenir por escrito en someter a arbitraje [...] cualquier controversia

---

[2] Se ha dicho que:

"If one party to an arbitration commences litigation against the other this does not terminate the arbitration nor prevent the arbitrator from continuing to give directions which require compliance. He could make no valid award on matters covered by the litigation without the parties' consent but there is nothing to prevent their giving it. See Lloyd v. Wright, 2 All ER 969, (CA).

Similarly, the grant of a stay does not terminate the action but simply puts it in cold storage; the existence of an arbitration agreement operates as a reason for the court not

que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo.  Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio". 32 L.P.R.A. sec. 3201.

En McGregor-Doniger v. Tribunal Superior, 98 D.P.R. 864, 869 (1970), expresamos que existe una fuerte política en favor del arbitraje y que toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor.  Así lo reafirmamos recientemente en PaineWebber, Inc. V. Service Concept, Inc., res. el 13 de junio de 2000, 2000 TSPR 85, y en World Films, Inc. v. Paramount Pict. Corp., 125 D.P.R. 352 (1990).

En U.C.P.R. v. Triangle Engeneering Corp., 136 D.P.R. 133 (1994), expusimos que ante un convenio de arbitraje lo prudencial es la abstención judicial, aunque esa intervención no esté vedada. La propia ley dispone que:

> "[s]i cualquiera de las partes de un convenio escrito de arbitraje incoare acción u otro recurso en derecho, el tribunal ante el cual dicha acción o recurso estuviere pendiente, una vez satisfecha de que cualquier controversia envuelta en dicha acción o recurso puede someterse a arbitraje al amparo de dicho convenio, dictará, a moción de cualquiera de las partes del convenio de arbitraje, la suspensión de la acción o recurso hasta tanto se haya procedido el arbitraje de conformidad con el convenio". 32 L.P.R.A. sec. 3203.

El interés estatal en promover el arbitraje como método para solucionar disputas se ve reflejado, además, en la presunción de arbitrabilidad cuando el contrato tiene una cláusula de arbitraje.  En esas circunstancias, las dudas deben resolverse a favor de dicha cobertura. AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 650 (1985).

Además de esa presunción, hay un interés de promover las cláusulas de arbitraje contractuales. AT&T Technologies, Inc. v. Communications Workers, ante. "Es un corolario necesario del principio de que 'el arbitraje es una materia de contrato' pues cuando las partes han provisto que un tipo particular de disputa debería ser arreglada en arbitraje, en lugar de en

_____

to exercise its jurisdiction." Arbitration: Law and Practice,

litigación, un tribunal no vulnerará dicho acuerdo decidiendo por sí mismo la disputa." (Traducción nuestra.) Nat. R. Passenger Corp. v. Boston and Maine Corp., 850 F.2d 756, 759 (Cir. D.C. 1988), citado en World Films, Inc. v. Paramount Pict. Corp., ante.

En vista de ello, el correcto proceder de las partes en el caso de autos es el de ceñirse al procedimiento de arbitraje expresamente pactado, ya que la controversia surgida con relación a la eliminación de Bird de la lista de suplidores es una relacionada con la ejecución del contrato y, por lo tanto, arbitrable según la cláusula que dispone que cualquier controversia relacionada al contrato o a su quebrantamiento se resolverá por medio de arbitraje. Con mayor razón debieron proceder de esta forma si partimos del hecho de que ya habían activado el proceso arbitral para la adjudicación de las controversias existentes con relación al contrato que las vinculaba.

Al recurrir al Tribunal de Circuito de Apelaciones estaban litigando un asunto que era arbitrable según la cláusula contractual y, sobre todo, que necesariamente llevarían al Tribunal, en el proceso de revisión, a hacer determinaciones de hechos sobre materias posiblemente idénticas a las que estaban ante la atención de un árbitro y sobre las cuales el mismo emitiría conclusiones que sustentarían su laudo. Esto redundaría en la indeseable situación de que las partes en el proceso arbitral, simultáneamente tendrían que litigar lo mismo en un pleito judicial o en un proceso administrativo, con la posibilidad de que se obtuvieran resultados contradictorios y se encareciera la solución de las controversias. Es evidente que la actuación administrativa de la A.E.E. que motivó el caso de autos descansa en determinaciones de hechos que a su vez, son materia sobre la cual el árbitro ha de expresarse en el proceso de adjudicación de la "demanda" y la "reconvención" arbitral:

> – si el contratista incurrió en mora;
>
> – si las cuantías adeudadas son las que alegan las partes;
>
> – si la obra se construyó conforme a lo pactado;

Rowland, Peter M.B., 1988, Pág. 8.

–si el Edificio Anexo sufrió daño por causa de la negligencia de Bird.

En fin, el proceso administrativo y la supuesta revisión judicial realmente versaban sobre asuntos que estaban sometidos a la adjudicación arbitral. Ventilar la controversia en tales foros equivale a propiciar el potencial de conflictos en la adjudicación de derechos y obligaciones.

En atención a nuestra fuerte política pública a favor de la eficacia de las cláusulas contractuales de arbitraje, al hecho de que ya se había iniciado dicho proceso arbitral en el caso de autos, y al ideal de promover la más rápida y económica solución a las controversias existentes entre las partes, éstas debieron limitarse a hacer efectivo y concluir el proceso de arbitraje, previo a cualquier otra actuación administrativa o judicial.

IV

En vista de que, por los fundamentos antes expresados, el Tribunal de Circuito de Apelaciones carecía de jurisdicción para acoger el recurso de revisión del cual se recurre en este caso, procede dictar Sentencia revocatoria de la dictada por dicho Tribunal.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Bird Construction Corp.**

    **Recurrida**

        **vs.**                         **CC-2000-504**         **CERTIORARI**

**Autoridad de Energía Eléctrica**

    **Peticionaria**


SENTENCIA

San Juan, Puerto Rico, a 20 de diciembre de 2000

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto y se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton disiente de la Opinión del Tribunal por entender que la Sentencia del Tribunal de Circuito de Apelaciones es esencialmente correcta y debió ser confirmada. El Juez Asociado señor Rivera Pérez no interviene. La Juez Asociada señora Naveira de Rodón no intervino.


                        Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo